IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID CALLAHAN,

      Plaintiff,                              No. CIV S-04-2355 KJM

      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                       <u>ORDER</u>

                                                   /

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. <u>Factual and Procedural Background</u>

In a decision dated May 24, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of severe episodic drug and alcohol abuse, possible learning disability, psychotic disorder, possible bipolar disorder and schizoaffective disorder and that plaintiff's mental impairments met the severity requirements of Listing 12.09 from the alleged onset date until August 2002, while abusing drugs and alcohol; plaintiff is not fully credible; during periods in which plaintiff does not use drugs or alcohol, plaintiff can perform unskilled work with no exertional limitations; plaintiff cannot

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

2

perform his past relevant work as a glazier; drug and alcohol abuse are material to the finding of disability in the period in which plaintiff met the disability requirements; using grid rule 204.00 with Social Security Ruling 85-15 as a framework for decisionmaking, plaintiff is not disabled when not abusing drugs and alcohol; and plaintiff is not eligible for payment of disability benefits on or before August 2002 and was not disabled thereafter. Administrative Transcript ("AT") 18-19.  Plaintiff contends the ALJ improperly assessed the opinions of the testifying medical expert and treating physicians and improperly relied on the grids.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

/////

3

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

    A. Physicians' Opinions

Plaintiff contends the ALJ erred in his analysis of the opinion of the testifying medical expert, Dr. Walter, and the opinions of the treating physicians. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1         Plaintiff contends the ALJ improperly rejected the opinions of the testifying
2 medical expert, Dr. Walter, with respect to nonexertional limitations.  Upon review of the
3 entirety of Dr. Walter's testimony, the court finds no error in the ALJ's analysis.  Dr. Walter
4 testified plaintiff was still suffering residual problems because of plaintiff's past drug abuse.
5 AT 65.  The doctor acknowledged that there was no evidence of drug use past 2002 but that as of
6 2004, plaintiff still could show improvement because there were still effects from the past drug
7 usage.  AT 71-72, 77-80.  In rendering opinions with respect to plaintiff's mental limitations, the
8 doctor relied on records pertaining to plaintiff's hospitalizations for psychotic episodes related to
9 plaintiff's drug abuse.  AT 70, 170-227.  Dr. Walter opined plaintiff's overall function would
10 improve 50 percent with complete abstention from alcohol or drugs of any sort.  AT 70, 71-72.
11 The ALJ's assessment of Dr. Walter's testimony, that absent drug or alcohol use, plaintiff would
12 not suffer from disabling mental limitations, is a reasonable interpretation and will not be
13 disturbed.
14         Plaintiff also contends the ALJ improperly rejected the opinions of Drs. Wenokur,
15 Melcher and Wyman.  Dr. Wenokur opined in July 2002 that once plaintiff's drug-induced
16 psychosis cleared, plaintiff had a prominent antisocial personality disorder.  AT 170.  Dr.
17 Melcher opined plaintiff has a true axis I disorder but that it is exacerbated by drug use.  AT 198.
18 This doctor also found plaintiff appeared to do well when on medications and clean and sober.
19 AT 198.  Dr. Wyman, in April 2004, opined plaintiff had moderately severe impairments in the
20 ability to perform work requiring frequent contact with others and in performing simple or
21 complex tasks in a full-time work setting.  AT 264.  The ALJ's opinion recognized these
22 opinions and noted they all were consistent with a finding that plaintiff's functioning improves
23 with abstinence and compliance with a medical regimen.  AT 15.  There was no error in the
24 ALJ's assessment of Dr. Wenokur's opinion, which did not assess any functional limitations in
25 connection with the diagnosis of antisocial personality disorder.  The ALJ's assessment of
26 plaintiff's residual functional capacity is also consistent with Dr. Melcher's assessment, which

5

noted improvement of functioning when drug abuse was not present.  Finally, Dr. Wyman's assessment made no attempt to separate out plaintiff's limitations attributable to residuals from plaintiff's drug abuse, a failure specifically noted by the ALJ.  AT 16, 17, 261-264.  In light of the entire record, the ALJ's interpretation of the medical record is reasonable and rational.

    B.  Grids

Plaintiff contends the ALJ improperly relied on the grids in finding plaintiff was not disabled.  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[2]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

---

[2] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n.6 (9th Cir.1989).
    Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n.7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1  F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

2  (requiring significant limitation on exertional capabilities in order to depart from the grids).

3          As discussed above, the ALJ properly found plaintiff had severe nonexertional

4  limitations only when using drugs or alcohol.  To the extent plaintiff had nonexertional

5  limitations unattributable to drug or alcohol use, the ALJ found plaintiff retained the residual

6  functional capacity to perform unskilled work at all exertional levels.  AT 19 (finding no. 5).

7  The ALJ relied on Social Security Ruling 85-15, which notes that unskilled jobs ordinarily

8  involve dealing primarily with objects, not people.  AT 17, 18.  That ruling also notes there are

9  over 2,500 unskilled jobs that can be performed at the medium, light and sedentary exertion

10 levels and there are additional unskilled jobs available at the heavy exertion level.  SSR 85-15.

11 Under these circumstances, the ALJ properly relied on the grids that administratively notice a

12 significant number of jobs available to plaintiff.

13         The ALJ's decision is fully supported by substantial evidence in the record and

14 based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

15         1.  Plaintiff's motion for summary judgment or remand is denied, and

16         2.  The Commissioner's cross-motion for summary judgment is granted.

17 DATED:  March 29, 2006.

                                            UNITED STATES MAGISTRATE JUDGE

006
callahan.ss